**Emil STAVRIOTIS, Debtor in Possession, Plaintiff,**

v.

**Gerald LITWIN; Clapp & Eisenberg, a professional corporation; Sam Elias and Robert Harmon, Defendants.**

No. 86 C 2328.

United States District Court, N.D. Illinois, E.D.

Nov. 10, 1988.

David Axelrod, Richard K. Wray, Nathanson & Wray, George S. Feiwell, Michael J. Kralovec, Daniel C. Meenan, Jr., Robert M. Birndorf, Feiwell, Galper & Lasky, Ltd., Ronald Brown, Arthur P. Sanderman, Brown & Shinitzky Chartered, Chicago, Ill., for plaintiff.

Ronald M. Wawrzyn, Foley & Lardner, Milwaukee, Wis., John J. Voortman, Schiff, Hardin & Waite, George P. McAndrews, John J. Held, Jr., McAndrews, Held & Malloy, John M. Heaphy, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

This cause is before the court on the motion of defendants, Gerald Litwin ("Litwin") and Clapp & Eisenberg ("C & E"), for summary judgment. For the reasons herein stated, the motion is denied.

## FACTS

Litwin, a lawyer licensed to practice in the State of New Jersey, and C & E, Litwin's former law firm which maintained its offices in Newark, New Jersey, represented plaintiff, Emil Stavriotis ("Stavriotis") in a number of legal endeavors beginning in 1979. In 1979 and 1980 Stavriotis, at the time a Tennessee resident, organized five coal entities either individually or as president of his Tennessee corporation, Exploring Resources, Inc. ("ERI"). Stavriotis further arranged with Minerals Development Corporation ("MDC") to develop and mine coal on behalf of the entities. Litwin and C & E provided legal services for Stavriotis and ERI in connection with these coal transactions.

In 1980 when MDC announced that it would no longer fulfill its development and mining obligations, the limited partners and venturers in the five coal entities agreed to exchange their interests in the entities for shares in a new aggregate partnership known as "Newpar." In 1981 MDC defaulted on its obligations to the entities under the Newpar exchange agreement. Beginning in December, 1983 and continuing thereafter, thirteen investors in the coal entities sued Stavriotis and Litwin.

Plaintiff has brought an amended complaint alleging that defendants negligently failed to perform various duties owed to plaintiff. Defendants now move for summary judgment on the ground that plaintiff's claims are barred by the applicable statute of limitations.

## DISCUSSION

A district court exercising its diversity jurisdiction applies the law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Edw. Hines Lumber Co. v. Vulcan Materials Co.*, 669 F.Supp. 854 (N.D.Ill.1987). In choosing a statute of limitations, Illinois courts follow the Illinois Borrowing Act when considering causes of action which arose outside of Illinois bor-

ders. *Edw. Hines Lumber Co.,* 669 F.Supp. at 856. The Borrowing Act provides:

> "When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State."

Ill.Rev.Stat., ch. 110, ¶ 13–210. As a matter of judicial construction, the Illinois Supreme Court applies the Illinois borrowing statute only to parties who were non-residents of Illinois when the cause of action accrued. *Miller v. Lockett,* 98 Ill.2d 478, 75 Ill.Dec. 224, 457 N.E.2d 14 (1983); *Williams v. Fulton County Jail,* 575 F.Supp. 306 (N.D.Ill.1983).

Thus the Borrowing Act applies in this case if:

1) None of the parties resided in Illinois when the cause of action arose;

2) The cause of action arose outside of Illinois; and

3) The foreign statute of limitations is shorter than that of Illinois.

Neither party disputes that the cause of action arose outside of Illinois and that none of the parties resided in Illinois when the cause of action arose. This motion for summary judgment centers around whether the applicable foreign statute of limitations for legal malpractice is shorter than that of Illinois.

Under the Illinois Borrowing Act the applicable foreign statute of limitations is that of the state in which the cause of action arose. For purposes of the Borrowing Act a tort cause of action, like plaintiff's, arises in the state with the most significant relationship to the action. *AT & SF Rwy. Co. v. Chevron, U.S.A., Inc.,* No. 82 C 3034, slip op. at 6, 1985 WL 2265 (N.D.Ill. Aug. 5, 1985). Defendants maintain that Tennessee has the most significant relationship to this action and that, as a result, the Tennessee statute of limitations for legal malpractice actions applies to this case. Plaintiff contends that New Jersey has the most significant relationship to this action and that because the New

Jersey statute of limitations for legal malpractice actions is longer than the comparable Illinois statute of limitations, the Illinois Borrowing Act does not apply to this action and the Illinois statute of limitations should be applied.

■ Under the "most significant relationship" test four factors are weighed to determine where the cause of action arose:

1) the place where the injury occurred;

2) the place where the conduct occurred;

3) the domicile, nationality, place of incorporation and place of business of the parties; and

4) the place where the relationship of the parties is centered.

*Ingersoll v. Klein,* 46 Ill.2d 42, 47–48, 262 N.E.2d 593 (1970). Where the cause of action involves standards of conduct, as it does in the case at bar, the place of conduct and the place of injury are the most important factors in determining which state has the most significant relationship to the action. Furthermore, "it is usually appropriate to apply the law of the place of the tort in order to give effect to that jurisdiction's interest in regulating conduct within its territorial borders." *Rosett v. Schatzman,* 157 Ill.App.3d 939, 943, 109 Ill.Dec. 900, 510 N.E.2d 968 (1st Dist.1987), quoting *Jackson v. Miller–Davis Co.,* 44 Ill.App.3d 611, 616, 3 Ill.Dec. 161, 358 N.E.2d 328 (1976). When the "most significant relationship" test is applied to the instant case and particular emphasis is placed on the site of the conduct causing the alleged injury as the most critical factor, it is clear that New Jersey and not Tennessee has the most significant relationship to this action.

#### 1. *Relationship of the Parties*

Throughout the period that plaintiff had a professional relationship with defendants, defendants maintained offices exclusively in New Jersey and provided legal services to plaintiff at their New Jersey offices. When the relationship between the parties was created, plaintiff resided in Tennessee but soon thereafter moved to Florida. Although ERI continued to operate in Tennessee subsequent to plaintiff's move to Florida, the relationship of the parties can

most plausibly be said to have centered in New Jersey as defendants resided there and provided legal services to plaintiff there throughout the period of the relationship.

## 2. *Domicile of the Parties*

Insofar as the factor of the state of domicile of the parties points to either New Jersey or Tennessee as the state with the most significant relationship to this action, it points to New Jersey. Both defendants maintained offices exclusively in New Jersey while plaintiff resided in Tennessee for only a portion of the period of time during which the professional relationship existed.

## 3. *Place of Injury*

When an injury is pecuniary in nature, as alleged here, the place where the injury occurred does not play an important role in the determination of which state has the most significant relationship to an action. This is because the place where a pecuniary injury occurs is far more difficult to locate than the place where a physical injury to a person or to a tangible thing occurs. *Restatement (Second) of Conflict of Laws*, Sec. 148 (1971). Consequently, the place of Stavriotis' injuries is not an important factor in determining whether New Jersey or Tennessee has the most significant relationship to this action.

As noted, *supra*, the most critical factor in determining whether Tennessee or New Jersey has the most significant relationship to this action is the place where the conduct causing the injury occurred. In his amended complaint plaintiff alleges that defendants committed legal malpractice by:

a) failing to advise plaintiff of the risks and obligations assumed by a general partner raising money from investors;

b) failing to see that plaintiff complied with state and federal securities laws;

c) failing to monitor the performance of MDC, which was to develop coal mining properties on behalf of plaintiff and investors;

d) failing to disclose certain material facts to plaintiff;

e) making material misrepresentations to plaintiff; and

f) failing to establish an escrow to accomplish the Newpar exchange, thus permitting plaintiff's property to be conveyed before title to the property to be acquired was perfected.

Defendants maintain that their alleged misconduct occurred primarily in Tennessee. Defendants also contend that any acts of misconduct or failure to act occurred in Tennessee where Stavriotis solicited investors, where most of the investors lived, where both ERI and MDC were located, and where the Newpar agreement was closed. While failures to act do not occur in any particular place, it seems most plausible to say that defendants' alleged failures to act "occurred" in New Jersey because had the omitted legal advices been given they would have been given in New Jersey. Defendants were licensed to practice by the State of New Jersey and maintained their only office in New Jersey. Litwin was not licensed to practice in Tennessee. Litwin, by his own admission, provided legal services to plaintiff for the most part at his offices in New Jersey (Litwin affdvt., ¶ 5). Litwin further admits that most of his actions relating to the allegations in Count I((a), (b) and (c), *supra*) took place in New Jersey (Litwin affdvt., ¶ 3), and that the documents drafted relating to the Newpar agreement were drafted in New Jersey (Litwin affdvt., ¶ 4). Clearly, then, the alleged acts of misconduct and failures to act which caused plaintiff's alleged injuries can most plausibly be said to have occurred in New Jersey where defendants most often provided legal services to plaintiff. For the foregoing reasons the court holds that New Jersey is the state with the most significant relationship to this action.

In New Jersey the statute of limitations for legal malpractice actions is six years. N.J.S.A., 2A:14-1; *Carney v. Finn*, 145 N.J.Super. 234, 367 A.2d 458 (1976). In Illinois the limitations period for causes of action involving legal malpractice is five years. Ill.Rev.Stat., ch. 110, ¶ 13–205; *Harvey v. Connor*, 85 Ill.App.3d 1061, 41 Ill.Dec. 381, 407 N.E.2d 879 (1st Dist.1980).

**220**

Given its requirement that the statute of limitations from the foreign state must be shorter than the Illinois limitations period, the Illinois Borrowing Act cannot be applied in this case. Illinois law requires that its five-year statute of limitations for causes of action involving legal malpractice be applied to this action.

■ Under Illinois law a cause of action for professional negligence by a lawyer does not accrue until the client discovered or should have discovered the negligence. *Bonanno v. Potthoff*, 527 F.Supp. 561 (N.D.Ill.1981). Thus plaintiff's cause of action is not time-barred unless he discovered, or should have discovered, defendants' alleged negligence before October 8, 1980, five years prior to the filing of Stavriotis' bankruptcy petition, which tolled the statute of limitations. Plaintiff contends and has produced some evidence in support of his contention that he did not discover, nor should he have discovered, defendants' alleged negligence before October 8, 1980. Defendants have produced no evidence to dispute this nor do they even maintain that plaintiff discovered, or should have discovered, defendants' alleged negligence before October 8, 1980. Accordingly, plaintiff's cause of action is not barred by the Illinois statute of limitations.

### CONCLUSION

For the reasons herein stated, defendants' motion for summary judgment is denied.

IT IS SO ORDERED.