BARBARA HANSEN, Plaintiff-Appellant, v. GOODYEAR TIRE AND RUBBER COMPANY *et al.*, Defendants-Appellees.

Third District No. 3—89—0252

Opinion filed February 8, 1990.—Rehearing denied March 15, 1990.

John M. Kovac, of Law Office of Louis Hilfman, Ltd., of Chicago (Robert L. Fogel, of counsel), for appellant.

Harold L. Turner, of Street, Larson & Turner, of Rockford (Joseph G. McGraw, of counsel), for appellee City of Rock Falls.

Patricia T. Bergeson and Stephen M. Naughton, both of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, for appellee Goodyear Tire and Rubber Company.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Douglas J. Pomatto and Kevin J. Luther, both of Heyl, Royster, Voelker & Allen, of Rockford, for appellee Montgomery Investment Company.

JUSTICE SCOTT delivered the opinion of the court:

Plaintiff-appellant, Barbara Hansen, appeals from two orders entered by the trial court dated March 30, 1989, and April 27, 1989, respectively. In the March 30 order, the trial court granted summary judgment in favor of defendants-appellees, Goodyear Tire and Rubber Company, Montgomery Investment Company and City of Rock Falls. In the April 27 order, the trial court vacated its previous order of March 30, granted plaintiff's motion to file a third amended complaint, granted defendants' respective oral motions to allow their prior motions for summary judgment to be directed towards plaintiff's third amended complaint and granted summary judgment in favor of

all defendants against plaintiff for all relief sought in plaintiff's third amended complaint.

Montgomery Investment Company (Montgomery) owned warehouses on the north and south sides of West First Street in Rock Falls, Illinois. The warehouses were generally known as building 6, located on the south side of West First Street, and buildings 2 and 3, located on the north side of the street. These buildings were leased to Goodyear Tire and Rubber Company (Goodyear).

Permanent fire escape ladders leading to the rooftops were attached to the warehouses on both sides of the street. In 1982, the ladder rungs began one foot from the ground; however, prior to plaintiff's incident, the lowest rungs had been cut off such that they started roughly eight feet from the ground. The warehouses were connected by an enclosed catwalk crossing West First Street in generally a north-south direction. The rooftop of the catwalk was accessible from the rooftops of the warehouses and was essentially flat.

Utility poles carrying three uninsulated electrical wires, owned and maintained by the City of Rock Falls (Rock Falls), were located on the south side of West First Street next to building 6 and ran in an east-west direction crossing the catwalk roof at a vertical height of five feet. The three wires carried 7,200 volts of electricity, having been increased from 2,400 volts in 1986. The wires crossing the catwalk were downstream from where they branched to service building 6.

On May 9, 1986, at approximately 10 p.m., Barbara Hansen, age 16 years and 8 months, and three other minors trespassed onto the land, climbing the ladders to the roof of the buildings. They walked in a southerly direction on the catwalk roof going from building 2 and 3 to building 6. Plaintiff bumped into the electrical wires while crossing the catwalk, causing serious personal injury.

The question to be decided is whether the trial court erred in granting defendants' respective motions for summary judgment. The trial court granted defendants' summary judgment motions after considering the recent decision of *Bonder v. Commonwealth Edison Co.* (1988), 168 Ill. App. 3d 80, 522 N.E.2d 227, and *In re Estate of Dickens* (1987), 161 Ill. App. 3d 565, 515 N.E.2d 208, wherein the First District Appellate Court basically held that 14- and 15-year-old plaintiffs could be deemed to appreciate the dangers posed by electrical wires as a matter of law, and therefore, the defendants owed no duty to plaintiffs. Plaintiff herein argues that *Bonder* and *Dickens* do not apply for numerous reasons and that there are material questions of fact requiring resolution by trial.

 Summary judgments are to be granted when

"the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).)

The trial court based its grant of summary judgment in favor of defendants on the notion that no defendant owed a duty to plaintiff because of obvious danger posed by the electrical lines. The question of. whether a duty exists is an issue of law to be determined by the court. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 305 N.E.2d 535.) Generally speaking, the owner or occupier of premises has no duty to exercise ordinary care to prevent injury to a trespasser but has a duty to refrain from willful or wanton misconduct. (*Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 474 N.E.2d 920.) This rule applies equally to adults and infants with the exception of what is commonly referred to as the *Kahn* doctrine. In *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E. 2d 836, our supreme court discredited the attractive nuisance doctrine and determined that liability for a child's injuries exists

"where the owner or person in possession [of the property] knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it." (*Kahn*, 5 Ill. 2d at 625.)

Under the *Kahn* doctrine, it seems the status of the minor as a guest or trespasser is irrelevant. Nonetheless:

"[I]t has been held that obvious risks which children of a similar age and experience would be expected to appreciate create no duty to remedy the dangerous condition." (*Bonder v. Commonwealth Edison Co.* (1988), 168 Ill. App. 3d 80, 82, 522 N.E.2d 227.)

The apparent rationale is that

"the law does not require the landowner or possessor of land to protect against the omnipresent possibility that children will in-

jure themselves on obvious or common conditions." (*Newby v. Lake Zurich Community Unit, District 95* (1985), 136 Ill. App. 3d 92, 98-99, 482 N.E.2d 1061.

A landowner simply cannot be an absolute insurer.

■ Plaintiff in this case distinguishes between the respective duties owed by Goodyear and Montgomery, as landowner or possessor of land, and Rock Falls, asserting that the *Kahn* doctrine does not apply to Rock Falls since it was not an owner or possessor of land. Thus, plaintiff alleges that Rock Falls owed merely a duty of ordinary care to plaintiff. This position is based, in part, on other portions of the *Kahn* decision wherein the court applied an ordinary negligence duty of care to a lumber company that delivered and piled lumber on land upon which a child was seriously injured. Plaintiff further cites *Knyal v. Illinois Power Co.* (1988), 169 Ill. App. 3d 440, 523 N.E.2d 639, in support of her position. In *Knyal*, the court interpreted section 386 of the Restatement (Second) of Torts (1977) and found that an electrical company maintaining wires across property is not protected by a landowner's privilege against liability to trespassers for ordinary negligence unless the wires are on the premises for the purpose of supplying service to the occupier. Plaintiff herein basically alleges that the power lines owned by Rock Falls and causing injury to plaintiff were not supplying service to Goodyear as the location of these lines were "downstream" from where the lines branched off and supplied service to Goodyear. In essence, plaintiff asserts that if the injury occurs at a point prior to the line servicing the building, the owner of the power line may stand in the shoes of the occupier of the building, but if the injury occurs at a point after the lines have serviced the building, then the owner of the power line does not have the same protection. Such a distinction is without merit. Power lines generally enter property to service a building by branching off, but then must also exit the property to service other properties. To say that the power line owner could be protected on one side of the property but not the other is nonsensical. The power lines in this case provided service to the building and, therefore, Rock Falls has the same privilege against liability for ordinary negligence in the maintenance of those lines as do Montgomery and Goodyear. Thus, the questions are whether plaintiff is entitled to recovery under the *Kahn* doctrine or whether defendants committed willful or wanton misconduct resulting in injuries to plaintiff.

■ We concur with the trial court that *Bonder* and *Dickens* are dispositive and dictate that summary judgment be granted in favor of defendants. *Bonder* and *Dickens* both involve situations where 14- and

15-year-old children were injured by coming into contact with power lines and summary judgment was awarded to the defendants. Although *Dickens* was a strict liability case relying on the defendant manufacturer's duty to warn, *Bonder* spoke directly to the *Kahn* doctrine and stated as a matter of law that 14-year-old children with plaintiff's age and experience are deemed capable of understanding the dangers involved in contacting power lines. *Bonder*, however, cites *Dickens* as authority in granting summary judgment in favor of the defendant. There is no indication in this case that someone of plaintiff's age and experience would not be capable of appreciating the danger posed by power lines, for example, if plaintiff suffered from some disability.

■■ Plaintiff distinguishes *Bonder* and *Dickens* on the basis that here darkness concealed the power lines, and therefore, plaintiff had no opportunity to appreciate the danger posed by the power lines. We decline to accept this distinction. Numerous other cases have determined that an open and obvious danger concealed only by darkness does not create liability on the part of the landowner. (See *Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 537 N.E.2d 738; *Hessler v. Cole* (1972), 7 Ill. App. 3d 902, 289 N.E.2d 204; *Dent v. Great Atlantic & Pacific Tea Co.* (1955), 4 Ill. App. 2d 500, 124 N.E.2d 360.) Although the theory of recovery in these cases was not under the *Kahn* doctrine, we still consider it applicable to the question in this case of whether darkness concealed the open and obvious danger of the power lines.

We also cannot ignore the fact that plaintiff chose to climb onto the rooftop at night intending to conceal her presence. Although using a light to view the area upon which she was proceeding would have given away her cover, the use of a light would likely have unveiled the power lines. In this sense, *Hessler* is persuasive. In *Hessler*, a woman was denied recovery on the basis that she should not have walked out onto an unfamiliar pier at night without the aid of a lighting device. Plaintiff is also not a "young child" as perceived by the *Kahn* doctrine, and even if these power lines were not clearly visible because of the darkness, plaintiff arguably is not a person whom the *Kahn* doctrine was designed to protect.

■■ We also hold, as a matter of law, that defendants committed no willful or wanton acts entitling plaintiff to recovery. It is true that a prior incident occurred at a time when the ladders attached to the sides of the buildings extended to the ground. After that incident, however, defendant cut the ladders so that the lowest rung was roughly eight feet above the ground. Moreover, and as indicated ear-

lier, the defective condition complained of was open and obvious. Plaintiff's failure to avoid the condition, especially after she trespassed onto the property, cannot be considered willful or wanton conduct on the part of defendants.

For the reasons stated above, the decision of the trial court is affirmed.

Affirmed.

BARRY and HEIPLE, JJ., concur.