OPINION OF THE COURT
Andrew V. Siracuse, J.
On September 4, 1990, Michael Trapani, 16 years old at the time, was visiting a friend’s house in the Town of Gates. At about 2:30 a.m. he decided to climb a nearby tree. A few of his friends had found places in the lower branches, but Trapani decided to climb all the way to the top. He was more than 20 feet up in the tree when he reached for another branch, either above him or in front of him. He touched a 7200-volt power line that ran through the tree, received a severe shock and fell to the ground.
Although Trapani survived both the electrocution and the fall, he allegedly suffered severe and permanent injuries and neurological damage as a result. He and his parents have sued Rochester Gas and Electric (RG&E), which owned and maintained the wire; the Town of Gates, which owned the strip of land upon which the tree stands and the tree itself, and which has responsibility for maintaining the lower branches of the *485 tree; and two tree services, collectively called "Laidlaw” herein, which had contracts with RG&E to maintain the branches in the vicinity of the wire.
All three defendants have moved for summary judgment dismissing the complaint. For the reasons below the motions of the Town and Laidlaw should be granted, but that of RG&E should be denied.
The basis of the claim against the Town is that it allowed the tree to become an inviting one to climb by failing to trim off a low-hanging "sitting limb” some four feet above the sidewalk. Plaintiffs argue that this renders the Town liable for the foreseeable consequences: that children were likely to climb such a tree and come in contact with power lines strung through it.
The court declines to impose upon the Town a duty to render all the trees within its care impossible to climb. Plaintiffs come close to stating this as an attractive nuisance case, a theory which is not part of New York law. The sole test for negligence is reasonable foreseeability, and the risk of electrocution is not a foreseeable consequence of allowing low-hanging branches to remain untrimmed. No danger arising from the Town’s duty, however conceived, led to the injury; the Town has no more responsibility for the safety of a power line strung through its trees than do other utility companies like telephone and cable television services (see, e.g., Holden v Boyle, 80 AD2d 281).
Laidlaw had been engaged by RG&E to trim the tree under standards which require a clear circle around the line with a seven-foot radius. Pictures of the tree taken right after the accident show branches much closer to the wire. Plaintiffs argue that if Michael Trapani were standing at the bottom of a 14-foot diameter clear circle he would not have found a branch to reach for, and thus he would not have come in contact with the branch.
Whatever the merits of this argument, the tree trimming was carried out under the control and direction of RG&E, which set the standards and monitored the tree services’ work; according to examination before trial testimony an RG&E staff member inspects the trimming work every day. Laidlaw had no discretion in its work, and thus should not be liable. Once the utility informed Laidlaw that the work was satisfactory it and not Laidlaw assumed responsibility for any consequential risks.
*486 There remains the question of RG&E’s responsibility. This case cannot be parallelled with White v Niagara Mohawk Power Corp. (197 AD2d 906), where the plaintiff climbed two fences, one of them topped with barbed wire, before she came in contact with the power line. The line in the present case was not fenced off, was not on utility property, and may have been invisible from within the tree.
No New York case has specifically addressed the question of a utility’s liability for wires strung through trees, but this kind of accident is common enough to merit an ALR annotation (Annotation, Liability for Injury or Death of Child from Electric Wire Encountered While Climbing Tree, 91 ALR3d 616). The utility in a vast majority of cases has been held liable to the child under similar circumstances (see, e.g., Petroski v Northern Indiana Pub. Serv. Co., 171 Ind App 14, 354 NE2d 736 [1976]; Bridges v Arkansas-Missouri Power Co., 410 SW2d 106 [Mo 1966]; Alabama Power Co. v Taylor, 293 Ala 484, 306 So 2d 236; Dolata v Ohio Edison Co., 2 Ohio App 3d 293, 441 NE2d 837; cf., Suarez v Omaha Pub. Power Disk, 218 Neb 4, 352 NW2d 157 [under Nebraska law contributory negligence by plaintiff requires plaintiff to show defendant was grossly negligent; only ordinary negligence here]; Crosby v Savannah Elec. & Power Co., 114 Ga App 193, 150 SE2d 563 [harsh standard for trespassers]).
New York cases provide at least suggestive support for this position; because of the extreme danger posed by high-voltage lines, power companies have been held to a correspondingly high standard of care (see, e.g., Miner v Long Is. Light. Co., 40 NY2d 372, 379 [one of the cases in which the Court of Appeals set out the current standard of care for owners]). The propensity of children to climb trees is well known, and even under the old doctrine of limited duty to trespassers utilities were held liable for injuries to children climbing on bridgework where power lines were exposed (Ferrari v New York Cent. R. R., 224 App Div 182).
RG&E cites numerous cases in its memorandum of law, most of which are significantly misconstrued.* It claims, first, that it was not foreseeable that someone would climb the tree at 2:30 in the morning. The number of foreign State cases certainly suggests that tree climbing in itself was foreseeable, and the time of the climb is irrelevant to anything except the *487 wire’s visibility — surely a question of fact. So, too, is the height of the plaintiff’s climb, which may go to comparative negligence but which was no more unforeseeable as a matter of law than the fact of the climb in the first place.
The utility then argues that it had no duty to insulate the wire, perhaps mindful of the strong support the Court of Appeals gave to insulating wires in residential areas in Miner (40 NY2d, at 380, supra). It points to the standards of the National Electric Safety Code, which it claims "have been accepted as authoritative in the area of electrical safety practices by New York Courts”. The cases cited refer to defendants’ failure to meet the standards as some evidence of negligence, but they do not hold that compliance with them absolves a utility. The holdings are black letter law and should not merit much comment, except for RG&E’s attempt to pass these cases off as meaning something different; as the Court of Appeals has held: "[T]he code itself expressly provides that its provisions are 'minimum requirements’ and that 'frequently’ circumstances require 'higher factors of safety than the minimum requirements of these rules’ * * * Moreover, compliance with customary or industry practices is not dispositive of due care but constitutes only some evidence thereof’ (Miner v Long Is. Light. Co., 40 NY2d, at 380-381, supra). In addition, even if the wire were appropriately left uninsulated, RG&E may be held liable for the alleged failure to keep the tree trimmed.
RG&E also claims it had no duty to warn of the open and obvious danger presented by the power line. Since the plaintiff testified that he could not see the power line, though, the danger was not open and obvious. In other words, although he may be charged with the knowledge that power lines were dangerous, he may have been unaware that climbing the tree put him in danger of encountering one; thus, the cases cited by RG&E are inapposite, because in them the plaintiff was aware of the location of the line (see, Bombard v Central Hudson Gas & Elec. Co., 205 AD2d 1018; Bonder v Commonwealth Edison Co., 168 Ill App 3d 80, 522 NE2d 227).
Finally, RG&E argues that Trapani’s climb was a superseding act which relieves it of liability. This argument must also fail, for there is no separate defense based on superseding act. Such an act is said to be unforeseeably reckless, and since duty is measured by foreseeability there can be no duty to guard against the unforeseeable. The court cannot say as a matter of law that it was unforeseeable that someone might *488 climb the tree, and thus the act of climbing the tree — at whatever hour — cannot be an unforeseeable superseding act as a matter of law.
Thus, while the complaint is dismissed as against the Town and Laidlaw, it survives against RG&E.

 The court has not considered submissions made after the Tuesday before oral argument.